**F I L E D**
United States Court of Appeals
Tenth Circuit

APR 14 1997

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 96-3287

CHRISTOPHER SIMMONDS,

Defendant-Appellant.

Appeal from the United States District Court
for the District of Kan.
(D.C. No. 96-3386-RDR)

Submitted on the briefs:[*]

Jackie N. Williams, United States Attorney, District of Kansas; Tanya J. Treadway, Assistant United States Attorney, District of Kansas; David S. Kris, Department of Justice, Washington, D.C., for Plaintiff-Appellee.

Michael G. Katz, Federal Public Defender; James P. Moran, Assistant Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

Before **BRORBY, HENRY** and **MURPHY**, Circuit Judges.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

**BRORBY**, Circuit Judge.

_____

Mr. Simmonds, a federal prisoner, appeals the United States District Court for the District of Kansas' denial of his motion for post-conviction relief pursuant to 28 U.S.C. § 2255. On appeal, we consider four issues: 1) whether this court should rule on a prisoner's application for a certificate of appealability pursuant to 28 U.S.C. § 2253(c) before requiring the government to file a brief on the appeal's merits; 2) whether 28 U.S.C. § 2254 habeas corpus[1] and 28 U.S.C. § 2255 proceedings are "civil actions" as contemplated by 28 U.S.C. § 1915 of the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996)[2]; 3) whether the one-year time limitation promulgated by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), for filing motions under 28 U.S.C. § 2255 applies to this motion;

_____

[1] 28 U.S.C. § 2254 and 28 U.S.C. § 2255 are both commonly referred to as habeas corpus petitions. _See Santana v. United States_, 98 F.3d 752, 753 n.1 (3d Cir. 1996). However, as this court has held, the two are different proceedings and should be treated accordingly. _United States v. Cook_, 997 F.2d 1312, 1316 n.3 (10th Cir. 1997). Therefore, use of the term "habeas corpus" as used in this opinion refers to § 2254 proceedings only.

[2] For the purposes of this issue only, we have consolidated for consideration and decision _Williams v. Henderson_, No. 96-1330 (Order and Judgment, Apr. 14, 1997), which involves a 28 U.S.C. § 2254 habeas corpus proceeding.

and 4) whether Mr. Simmonds is entitled to a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

## I. FACTS

In 1990, Mr. Simmonds was convicted on two counts of assaulting a corrections officer with a dangerous weapon, in violation of 18 U.S.C. § 111(a)(1), (b), and one count of possessing a prohibited weapon, in violation of 18 U.S.C. § 1791(a)(2). On direct appeal, Mr. Simmonds challenged his conviction on the ground the district court committed plain error in failing to instruct the jury on a diminished capacity defense. This court affirmed Mr. Simmonds' conviction in *United States v. Simmonds*, 931 F.2d 685, 689 (10th Cir.), *cert. denied*, 502 U.S. 840 (1991). In 1996, Mr. Simmonds filed a *pro se* motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, arguing his counsel was constitutionally ineffective for failing to request jury instructions on intent and diminished capacity. Mr. Simmonds also filed an application to proceed *in forma pauperis*.

The district court granted the application to proceed *in forma pauperis*, but denied Mr. Simmonds' motion to vacate without a hearing, concluding the motion was frivolous and untimely under the one-year time limitation in the Antiterrorism

and Effective Death Penalty Act.  28 U.S.C. § 2255.  Mr. Simmonds filed a notice of appeal, a motion to proceed *in forma pauperis*, and an application for a certificate of appealability.  The district court issued an order denying the certificate of appealability pursuant to 28 U.S.C. § 2253(c).  The government filed a motion requesting this court rule on Mr. Simmonds' application for a certificate of appealability prior to requiring the government to file a brief on the appeal's merits.  This court took the government's motion under advisement and ordered the government to brief the sequencing issue in its brief addressing the appeal's merits.

## II.  ISSUES

### A.  Sequencing of Briefs

We first address whether the circuit court should rule on the prisoner's application for a certificate of appealability under 28 U.S.C. § 2253(c) prior to requiring the government to file a brief addressing the appeal's merits.  As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c) provides a prisoner may not appeal a 28 U.S.C. § 2255 motion or final order in a habeas corpus proceeding before a "circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A), (B).  This language seems to indicate certificates of appealability should be issued, if at all, only by a

-4-

circuit justice or judge.[3]  *Id.*  The language of this amended statute seems to

conflict with Fed. R. App. P. 22(b), which provides the district court judge who

entered the judgment "shall either issue a certificate of appealability or state the

reasons why such a certificate should not issue"; under Rule 22(b), only after the

district court has denied the certificate will the circuit court consider whether the

certificate should issue.  *Id.*  While the specific language of Fed. R. App. P. 22(b)

seems to deal only with habeas corpus proceedings, and not 28 U.S.C. § 2255

motions, the caption of the rule indicates its application to § 2255 motions.  *See*

Fed. R. App. P. 22(b) (rule captioned "Habeas Corpus and Section 2255

Proceedings").  Consequently, the statute and rule created confusion as to the

district court's role in issuing certificates of appealability.

---

[3]  Mr. Simmonds states the certificate of appealability requirements of 28 U.S.C. § 2253(c) are inapplicable to him citing *United States v. Lopez*, 100 F.3d 113 (10th Cir. 1996).  We can only assume from his reliance on *Lopez* that Mr. Simmonds is attempting to argue this court would be giving 28 U.S.C. § 2253 an impermissible retroactive effect by requiring Mr. Simmonds to obtain a certificate of appealability.  *See Lopez*, 100 F.3d at 117.  However, in *Lopez*, the prisoner had filed his 28 U.S.C. § 2255 motion prior to the effective date of the 28 U.S.C. § 2253(c) amendments.  *Id.* at 116.  Here, Mr. Simmonds filed his 28 U.S.C. § 2255 motion after the amendment's effective date.  Consequently, because Mr. Simmonds had notice of 28 U.S.C. § 2253's requirements when he filed his motion, and because the requirements of 28 U.S.C. § 2253(c) govern procedural conduct occurring after the amendment's effective date, no retroactivity problem exists.  *See Landgraf v. USI Film Products*, 511 U.S. 244, 275 (1994).

In an attempt to resolve the apparent conflict, this court issued an emergency order "direct[ing] the district courts to consider the propriety of issuing certificates of appealability in the first instance."  Emergency General Order, *In re Procedures Regarding the Prison Litigation Reform Act and the Antiterrorist and Effective Death Penalty Act*, No. 96-41 (10th Cir. Oct. 1, 1996).[4]  Additionally, the order directs if a certificate of appealability is denied by the district court, "petitioner-appellants will be required to brief any request for a certificate of appealability in this court and address the merits of their appeals at the same time.  Respondent-appellees shall not file a brief until requested to do so by this court."  *Id.* (citation omitted).

We agree with the government that the circuit court should, in most cases, rule on the certificate of appealability prior to requiring the government's merit brief.  This conclusion is supported not only by the plain language of the Emergency Order, but also by the legislative intent of the Antiterrorism and Effective Death Penalty Act.  Congress enacted the certificate of appealability provisions in an attempt to curb repetitive filings and to mitigate the burden on

---

[4] In *Houchon v. Zavaras*, 107 F.3d 1465, ____, 1997 WL 81157, *2-4 (Feb. 27, 1997), this court held 28 U.S.C. § 2253(c) does not foreclose district judges from issuing certificates of appealability in habeas corpus petitions.

taxpayers resulting from such abuses. *See* 141 Cong. Rec. H1400-02 (daily ed. Feb. 7, 1995) (statement of Rep. Stenholm). Requiring the government to invest time, money, and energy into briefing the merits of an appeal before the circuit court has even ruled on whether it will exercise jurisdiction under 28 U.S.C. § 2253(c), is contrary to the certificate of appealability's intended purpose. As a result, given the plain language of the Emergency Order, coupled with the intent of 28 U.S.C. § 2253(c), we hold the circuit court should rule on whether it will issue a certificate of appealability before requiring the government's merit brief.

However, as mandated by the permissive language in the emergency order, this holding leaves ajar the door of discretion vested in the circuit court; the circuit court may still request the government's merit brief before ruling on a certificate of appealability, especially in those cases the court finds particularly difficult or complex such that a merit brief from the government would significantly aid its decision. Furthermore, as directed in Fed. R. App. P. 22(b), when the district court denies a certificate of appealability, it should provide an aid to the circuit court in evaluating a petitioner's request for a certificate by stating "the reasons why such a certificate should not issue." Nevertheless, barring any unique or difficult cases, the circuit court should rule on a certificate

of appealability before requiring the government's brief addressing the appeal's merits.

**B.  Interpretation of "civil action" in 28 U.S.C. § 1915.**

As stated, for purposes of this issue only, we consolidate for consideration and decision *Williams v. Henderson*, No. 96-1330 (Order and Judgment, Apr. 14, 1997); consequently, we consider whether *in forma pauperis* 28 U.S.C. § 2254 habeas corpus (the state prisoner's vehicle for post-conviction relief) or 28 U.S.C. § 2255 proceedings (the federal prisoner's version of habeas corpus) are "civil actions" for purposes of 28 U.S.C. § 1915.  We conclude, as at least five other circuits have, they are not.  *Naddi v. Hill*, 106 F.3d 275, 277 (9th Cir. 1997) (habeas corpus proceedings are not "civil actions" for purposes of 28 U.S.C. § 1915); *United States v. Cole*, 101 F.3d 1076, 1077 (5th Cir. 1996) (28 U.S.C. § 2255 proceedings are not "civil actions" for purposes of 28 U.S.C. § 1915); *Santana*, 98 F.3d at 754-55 (same); *Martin v. United States*, 96 F.3d 853, 855 (7th Cir. 1996) (neither habeas nor 28 U.S.C. § 2255 proceedings are "civil actions" for purposes of 28 U.S.C. § 1915); *Reyes v. Keane*, 90 F.3d 676, 678 (2d Cir.

1996) (habeas corpus proceedings are not "civil actions" for purposes of 28 U.S.C. § 1915).[5]

Pursuant to 28 U.S.C. § 1915, as amended by the Prison Litigation Reform Act, prisoners proceeding *in forma pauperis* who bring a "civil action" or appeal a judgment in a civil action are required to pay all filing fees[6]. The Prison

_____

[5] The United States government concedes § 2255 proceedings are not "civil actions" for purposes of 28 U.S.C. § 1915.

[6] 28 U.S.C. § 1915(a)(2) provides:

A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1) shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

28 U.S.C. § 1915(b)(1) provides:

Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal *in forma pauperis*, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of --
    (A) the average monthly deposits to the prisoner's account; or
    (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Litigation Reform Act does not define "civil action" for purposes of *in forma pauperis* litigants and fails to expressly exclude habeas and § 2255 proceedings from its scope. When interpreting a statutory term, a reviewing court must determine whether the language is ambiguous or whether it has a plain meaning; if the statutory language is ambiguous, a court can then resort to legislative history as an aid to interpretation. *United States v. Floyd*, 81 F.3d 1517, 1523 (10th Cir.), *cert. denied*, 117 S. Ct. 144 (1996); *United States v. Roberts*, 88 F.3d 872, 877 (10th Cir. 1996).

Unlike many terms that are easily definable, "civil action" is a term used in many statutes, and its meaning depends on its context within the applicable legislation. *Green v. Nottingham*, 90 F.3d 415, 417 (10th Cir. 1996). "'The application of each statute or rule using the words "civil action" must be decided on the basis of its language, its history, and its purpose.'" *Id.* (quoting *Payden v. United States (In re Grand Jury Subpoena Duces Tecum)*, 775 F.2d 499, 503 (2d Cir. 1985)). Therefore, we consider the meaning of the phrase "civil action" only as applied in the Prison Litigation Reform Act's context.

Habeas corpus and 28 U.S.C. § 2255 proceedings are strange and slippery creatures. Certainly, habeas corpus and § 2255 are different proceedings and

should be treated as such in most contexts. The two proceedings are governed by different statutes and serve different policies. *See* Rules Governing Section 2255 Proceedings, Rule 1, and accompanying Advisory Committee Note. One striking consistency between the two proceedings, however, is the courts' continual inconsistent treatment of those proceedings.

For instance, for some procedural purposes, habeas proceedings are considered "civil." *See, e.g., Browder v. Director, Illinois Dept. of Corrections*, 434 U.S. 257, 269 (1978) ("It is well settled that habeas corpus is a civil proceeding."); *Ex parte Tom Tong*, 108 U.S. 556, 559-60 (1883) (habeas corpus review is a civil proceeding because its purpose is to enforce civil rights). Yet for other purposes, they are not. *See, e.g., Harris v. Nelson*, 394 U.S. 286, 293-94 (1969) ("Essentially, the proceeding is unique. Habeas corpus practice in the federal courts has conformed with civil practice only in a general sense."); *Ewing v. Rodgers*, 826 F.2d 967, 971 (10th Cir. 1987) (holding habeas corpus is not a "civil action" for purposes of the Equal Access to Justice Act provision for award of attorney fees to prevailing party).

The same inconsistency exists in the treatment of § 2255 proceedings. In *United States v. Gutierrez*, 839 F.2d 648, 651 (10th Cir. 1988), this court held the

Federal Rules of Civil Procedure apply to a motion to dismiss a § 2255 motion. However, in *Cook*, 997 F.2d 1312, this court relied on the Rules Governing Section 2255 Proceedings to determine a § 2255 proceeding is a continuation of the original criminal matter such that it is inappropriate for a district court to dismiss such motions as frivolous under 28 U.S.C. § 1915(d).[7]

Further, while the Rules Governing § 2255 proceedings recognize the general concept that a § 2255 proceeding is a further step in the original criminal case, *see* Rules Governing Section 2255 Proceedings, Rules 1, 3, and accompanying Advisory Committee Notes, in *United States v. Frady*, 456 U.S. 152, 167 (1982), the Court refused to apply the "plain error" standard of Fed. R. Crim. P. 52(b) to § 2255 proceedings. Consequently, like habeas proceedings,

---

[7] In light of Congress' sweeping changes to the statutes surrounding prisoner litigation as reflected in the Antiterrorism and Effective Death Penalty Act and the Prison Litigation Reform Act, the applicability and/or continuing validity of the Rules Governing § 2254 and § 2255 is uncertain.

*Cook* also relied on the Rules Governing Section 2255 Proceedings to hold because § 2255 proceedings are a continuation to the criminal matter, filing fees or leave to proceed *in forma pauperis* is not required. However, even assuming the continuing validity of the Rules Governing § 2255 Proceedings, we note our decision here is consistent with that in *Cook*, 997 F.2d at 1315-16, 1319. In fact, our decision here flows logically from *Cook*. By deciding a § 2255 proceeding is not a "civil action" for purposes of 28 U.S.C. § 1915's mandatory fee provisions, we are not precluding § 2255's criminal nature in this or other contexts.

§ 2255 proceedings remain beyond the ambit of a traditional "civil" or "criminal" characterization in all contexts.

The precise nature of § 2255 proceedings and § 2254 proceedings remains highly dependent on the proceedings' context. The fact that the nature of habeas and § 2255 proceedings is one of consistent inconsistency, however, does not trouble us, for in some instances, "[a] foolish consistency is the hobgoblin of little minds, adored by little statesmen and philosophers and divines." Emerson, *Self Reliance*, *in* Essays: First Series (1841).

Because neither habeas nor § 2255 proceedings can be uniformly characterized and because the context of the issue before us is narrow and well defined -- the scope of the Prison Litigation Reform Act fee provisions -- we find it analytically useful to consider habeas and § 2255 proceedings together. This is not to say, however, that we intend to group two animals of different genera into the same species outside this narrow context. Rather, today, we consider only whether the term "civil action" as used in the Prison Litigation Reform Act extends to habeas and § 2255 actions. This analytical framework finds support in our sister circuits' treatment of the identical issue. *See, e.g., Santana*, 98 F.3d at 753-56; *Martin*, 96 F.3d at 855-56.

-13-

Indeed, it is because the nature of habeas and § 2255 actions is imprecise and contextually dependent that Congress' failure to define the term "civil action" in the context of the Prison Litigation Reform Act renders the statute ambiguous. Therefore, we consider the statute's intent and purpose to aid in our interpretation. *See Santana*, 98 F.3d at 755-56; *see also, Ewing*, 826 F.2d at 970.

We agree with the other circuits that have considered the issue that the legislative history and purpose of the newly amended 28 U.S.C. § 1915 show the filing fee requirements of that statute were not intended to extend to habeas or § 2255 proceedings. The main purpose of the Prison Litigation Reform Act was to curtail abusive prison-condition litigation. *See, e.g.*, 141 Cong. Rec. S7498-01 (daily ed. May 25, 1995) (statement of Sen. Dole) (the Prison Litigation Reform Act will limit prisoner-condition lawsuits "claiming such grievances as insufficient storage locker space, being prohibited from attending a wedding anniversary party, and yes, being served creamy peanut butter instead of the chunky variety they had ordered."). Additionally, 28 U.S.C. § 1915 was amended to provide an "economic disincentive" to abusive litigation. *See id.* However, unlike the filing fee for a civil action, which is $120.00, the filing fee for habeas actions is $5.00, an amount Congress' amendments failed to increase. 28 U.S.C. § 1914(a); *see also Santana*, 98 F.3d at 756; *Reyes*, 90 F.3d at 678.

Furthermore, the Antiterrorism and Effective Death Penalty Act, enacted two days before the Prison Litigation Reform Act, deals extensively with successive habeas and § 2255 actions; had Congress wanted to reform the fee provisions for habeas and § 2255 actions, it would have been appropriate to do so there. *See Cole*, 101 F.3d at 1077*; Santana*, 98 F.3d at 755; *Martin*, 96 F.3d at 855; *Reyes*, 90 F.3d at 678. Finally, newly added 28 U.S.C. § 1915(g) limits a prisoner proceeding *in forma pauperis* to three frivolous "civil action" suits or appeals in a lifetime unless the prisoner is under "imminent danger of serious physical injury." If "civil action" includes habeas and § 2255 proceedings in the context of 28 U.S.C. § 1915, conceivably, a prisoner who had brought three frivolous prisoner-condition lawsuits would be prohibited from bringing a first habeas or § 2255 action. Certainly, such a result "would be contrary to a long tradition of ready access of prisoners to federal habeas corpus." *Martin*, 96 F.3d at 855-56. For the above reasons, we conclude the intent and purpose of the Prison Litigation Reform Act shows the phrase "civil action" in 28 U.S.C. § 1915 was not meant to apply to habeas corpus and 28 U.S.C. § 2255 proceedings.

Our decision in *Green* does not require a different result. 90 F.3d at 418. In *Green*, this circuit determined a petition for writ of mandamus, filed in the course of a habeas proceeding, was a "civil action" under 28 U.S.C. § 1915 such

that it was subject to § 1915's filing fee provisions. *Id.* A careful reader of *Green* may conclude any "complaint" or "lawsuit" filed by a prisoner is subject to 28 U.S.C. § 1915's fee provisions. *Id.* However, such a reading would be in error. In *Green*, the prisoner sought not only to hasten his habeas petition, but also sought to have this court order the district court to adopt new rules and procedures in order to expedite its habeas review process. *Id.* at 416. By the time *Green* was filed, most of Mr. Green's complaints regarding his habeas petition were moot such that *Green* was decided in a context closely resembling a prisoner-condition lawsuit. *Id.* at 416 n.1.

Furthermore, in *Green*, we were specifically concerned with prisoners using writs of mandamus to subvert § 1915's intent to curtail abusive litigation; "[a]llowing prisoners to continue filing actions as they had before enactment of the amendments, merely by framing pleadings as petitions for mandamus would allow a loophole Congress surely did not intend in its stated goal of 'discourag[ing] frivolous and abusive prison lawsuits.'" *Id.* at 418. Here, we are not faced with the same concern. By concluding "civil action" does not include habeas or § 2255 actions, we are not, contrary to Congress' intent, creating a back door through which prison-condition litigation is admitted without first requiring a prisoner to satisfy 28 U.S.C. § 1915's fee provisions. Rather, we leave ready

access of prisoners to habeas and § 2255 remedies Congress has not intended to restrict through the fee provisions of 28 U.S.C. § 1915.

Additionally, we do not believe the language of 28 U.S.C. § 1915(b)(1) requires a prisoner to pay the full amount of a filing fee for all appeals, regardless of the appeal's nature. While the language of § 1915(b)(1) refers to "a civil action or ... an appeal," we agree with the Seventh and Second Circuits that read in context, the word "appeal" means an appeal of a civil action. *Martin*, 96 F.3d at 854; *Reyes*, 90 F.3d at 678. Reading 28 U.S.C. § 1915(b)(1)(B) and § 1915(a)(2) together makes plain only a prisoner's filing of a "civil action or appeal ... in a civil action" triggers the fee provisions of § 1915(b)(1). Therefore, we hold neither habeas corpus or 28 U.S.C. § 2255 proceedings, nor appeals of those proceedings are "civil actions" for purposes of 28 U.S.C. § 1915.

**C. Amended Time-Limit Provision of 28 U.S.C. § 2255**

The Antiterrorism and Effective Death Penalty Act amended 28 U.S.C. § 2255 by adding a time-limit provision for § 2255 motions.[8] As amended, 28

---

[8] Specifically, 28 U.S.C. § 2255 provides:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of --
(1) the date on which the judgment of conviction becomes

U.S.C. § 2255 precludes a prisoner from filing a § 2255 motion more than one year after the conviction becomes final.[9]  28 U.S.C. § 2255(1).  Prior to this amendment, "a party could bring a § 2255 motion at any time." *Lopez*, 100 F.3d at 116.  Mr. Simmonds' conviction became "final" after the Supreme Court denied certiorari on October 7, 1991.  *United States v. Simmonds*, 931 F.2d 685 (10th Cir.), *cert. denied*, 520 U.S. 840 (1991); *see United States v. Cuch*, 79 F.3d 987, 991 n.9 (10th Cir.) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987)) (a final conviction is one in which the Supreme Court has denied a petition for certiorari), *cert. denied*, 117 S. Ct. 384 (1996).  Therefore, literal application of the amended statute would bar Mr. Simmonds' § 2255 motion as of October 7,

---

final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the fact supporting the claim or claims presented could have been discovered through the exercise of due diligence.

[9] Mr. Simmonds does not appear to rely on any of the three remaining subsections of 28 U.S.C. § 2255; therefore, we limit our analysis to 28 U.S.C. § 2255(1).

1992, more than three years prior to the amended statute's effective date.[10]  In *Lopez*, we held the amended one-year limitation period does not apply to § 2255 motions filed before April 24, 1996.  100 F.3d at 116-17.  However, because Mr. Simmonds filed his motion well after that date, we now consider whether application of the new time period limitation to Mr. Simmonds' motion would be impermissibly retroactive.

"When a case implicates a federal statute enacted after the events giving rise to the suit," absent clear Congressional intent to the contrary, a presumption against retroactive legislation should apply.  *Landgraf*, 511 U.S. at 280.  The presumption against retroactivity is "deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic."  *Id.* at 265.  Retroactivity concerns are guided by "considerations of fair notice, reasonable reliance, and settled expectations."  *Id.* at 270.

Generally, retroactivity concerns do not bar a changed limitation period's application to a suit filed after the amendment's effective date.  *See, e.g., Forest*

_____

[10]  Because the time limit in 28 U.S.C. § 2255 has no express effective date provision, the effective date is April 24, 1996, the day the President signed the bill into law.  *See Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991); *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996).

*v. United States Postal Serv.*, 97 F.3d 137, 139-40 (6th Cir. 1996); *Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 890 (2d Cir. 1995). However, a new time limitation cannot be so unfairly applied to bar a suit before the claimant has had a reasonable opportunity to bring it. Indeed, the Supreme Court has explained:

> "It may be properly conceded that all statute of limitations must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions. It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action ...."

*Texaco, Inc. v. Short*, 454 U.S. 516, 527 n.21 (1982) (quoting *Wilson v. Iseminger*, 185 U.S. 55, 62-63 (1902)). *See also, Derstein v. Van Buren*, 828 F.2d 653, 655 (10th Cir. 1987) (refusing to retroactively apply new limitations period where new time period had already expired); *Hanner v. Mississippi*, 833 F.2d 55, 57 (5th Cir. 1987) (shortened limitation period barring pre-accrued claims must first provide plaintiffs with a "reasonable time" to file); *Anton v. Lehpamer*, 787 F.2d 1141, 1146 (7th Cir. 1986) (allowing two-year grace period to avoid unfair application of new limitations period).

Applying the amended statute of limitations to Mr. Simmonds' § 2255 motion would be "entirely unfair and a severe instance of retroactivity." *Reyes*, 90 F.3d at 679 (holding new time period of 28 U.S.C. § 2244(d) inapplicable to pending habeas petition where period ended before amendment's effective date); *See also*, *Lindh v. Murphy*, 96 F.3d 856, 866 (7th Cir. 1996), *cert. granted on other grounds*, 117 S. Ct. 726, (1997). Prior to the amended 28 U.S.C. § 2255's effective date, Mr. Simmonds had every right to bring, and every fair expectation to believe a court would entertain his 28 U.S.C. § 2255 motion. Applying the new time limitation to his claim would mean that on the day of April 24, 1996, without prior notice or opportunity to act, Congress stripped Mr. Simmonds' rights and fair expectations as of three years prior to that date. This we cannot allow. A statute cannot retroactively bar a prisoner from his or her ability to have a court consider the propriety of a § 2255 motion without first having a reasonable time to bring the claim; additionally, there is no indication Congress intended to foreclose prisoners who had no prior notice of the new limitations period from bringing their § 2255 motions.

Therefore, we hold application of the new time period to Mr. Simmonds' § 2255 motion without first affording him a reasonable time to bring his claim impermissibly retroactive. Furthermore, we hold the one-year limitations period

reflected in the amended 28 U.S.C. § 2255 is also a reasonable time for prisoners to bring § 2255 motions whose convictions became final before the Antiterrorism and Effective Death Penalty Act took effect. Accordingly, prisoners whose convictions became final on or before April 24, 1996 must file their § 2255 motions before April 24, 1997. *See Lindh*, 96 F.3d at 866 (the time period imposed by the Antiterrorism and Effective Death Penalty Act is "short enough that the 'reasonable time' after April 24, 1996, and the one-year statutory period coalesce; reliance interests lead us to conclude that no collateral attack filed by April 23, 1997, may be dismissed under [28 U.S.C.] § 2244(d) and ... 28 U.S.C. § 2255."). Consequently, because Mr. Simmonds filed his § 2255 motion prior to April 23, 1997, we hold the motion was timely.[11]

### D. Certificate of Appealability

The Antiterrorism and Effective Death Penalty Act requires a certificate of appealability be granted before a prisoner may appeal a § 2255 motion's denial. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only if "the applicant has made a substantial showing of the denial of a constitutional right."

---

[11] The government concedes the new time limit provision of 28 U.S.C. § 2255 does not apply to this case.

28 U.S.C. § 2253(c)(2). We hold Simmonds has failed to satisfy this burden and, accordingly, we deny his certificate of appealability.

Mr. Simmonds claims he was unconstitutionally denied effective assistance of counsel during his original criminal trial, and that he was entitled to an evidentiary hearing in the district court to support the claim. To satisfy a claim of ineffective assistance, a claimant must show both that counsel's performance fell below professional norms, and that the deficient performance was prejudicial to his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Romero v. Tansy*, 46 F.3d 1024, 1029 (10th Cir.), *cert. denied*, 115 S. Ct. 2591 (1995). Specifically, Mr. Simmonds argues his trial counsel was ineffective for failing to request a jury instruction on diminished capacity. During his direct appeal, Mr. Simmonds argued the district court committed plain error in failing to instruct the jury on diminished capacity. *Simmonds*, 931 F.2d at 686. This court held that even if the instruction on diminished capacity were warranted, "the district court's instructions on specific intent were sufficient." *Id.* at 689. Consequently, even assuming Mr. Simmonds counsel's performance fell below professional norms, Mr. Simmonds has failed to show how his trial counsel's failure to request the jury instruction was so prejudicial to his defense so as to deprive him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

Additionally, Mr. Simmonds was not entitled to an evidentiary hearing before the district court to support his claim of ineffective assistance.  In a § 2255 proceeding, the district court is not required to hold an evidentiary hearing on a prisoner's claims where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; *see also United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995). Because the records of the case conclusively show the prisoner is entitled to no relief, we hold Mr. Simmonds was not entitled to an evidentiary hearing. Consequently, because Mr. Simmonds failed to make a substantial showing of a denial of a constitutional right, we deny his application for certificate of appealability.[12]

Accordingly, we **DENY** Mr. Simmonds' application for a certificate of appealability and **DISMISS** the appeal.

---

[12]  To the extent Mr. Simmonds' 28 U.S.C. § 2255 motion raises additional issues, upon thorough review we find nothing in the record to support his contentions and accordingly deny a certificate of appealability.